SPAET, HAROLD B., Associate Judge.
Appellant, Alan Stewart Marsh, Sr., was charged, along with one, William Underwood, with the crimes of breaking and entering with intent to commit a felony, and grand larceny. Separate trials were had for each defendant.
The subject of the grand larceny was a safe transported from the premises of Loew’s 170th Street Theater in Dade County, Florida.
The safe was taken from the appellant’s automobile, by police officers, who saw the safe on the back seat of the automobile uncovered and in plain view.
The appellant testified in his own behalf and explained his possession of the safe at the time and place as follows:
That Underwood, a co-employee of the trucking firm, where appellant worked, asked him to help Underwood move the safe from Loew’s 170th Street Theater down to Loew’s Riviera in South Miami, Florida. That Underwood’s cousin was the manager of the theater and would pay them $10.00 for the job. (State’s witness, Poss, manager of the theater likewise testified to the relationship between Underwood and himself, and that Underwood had the keys to the front door of the theater and the supply room.)
*223 That in removing the safe, the appellant ripped the seam of his pants and stopped at his apartment to change. That the apartment was next to the Club Johnson, in Medley, on the parking lot of which the car and safe were found.
Essentially, the State’s proof was bottomed on the appellant’s unexplained or “unsatisfactorily explained” possession of the stolen property. The State so contends in its brief citing Cone v. State, Fla., 69 So.2d 175. " ” "
With that in mind, we feel the court below committed reversible error in permitting the prosecuting attorney to lay an illusory foundation for an imaginary impeachment of the appellant’s testimony. What occurred is revealed in the following excerpt from the record:
“Q (by Assistant State Attorney in cross-examining appellant) Do you know somebody by the name of Myrna Adams ?
A Yes, I do.
Q Do you know where she works?
A Johnson’s.
Q In the bar there; doesn’t she?
A Yes. She is a barmaid there.
Q Isn’t it a fact that you and Mr. Underwood were in that bar drinking and you bragged to Mr. Adams (sic, Myrna Adams obviously intended instead of Mr. Adams) that you were going to go break in a place and steal a safe?
A No.
MR. NASELLA: Your Honor, I am going to object to that. There has been no testimony in this case—
Q (By Mr. Moran) You were in the—
THE COURT: Overruled.
Q (By Mr. Moran) You were in the bar with Underwood and talking to Myrna Adams—
A Definitely.
Q —on the 10th?
A On the 10th ?
Q Yes.
A No, sir, not on the 10th.
Q So, it is your testimony that you weren’t in there talking to Myrna Adams ?
A On the 10th, no, sir.
Q Well, had you ever been in there any other nights bragging about going in and getting a safe?
A No, sir.
MR. NASELLA: We are going to object to that, Judge. Improper cross-examination. He is trying to make a case on cross-examination. There has been no testimony of this Myrna Adams or somebody.
THE COURT: All right. Take the jury out.
(Thereupon the jury retired from the courtroom, and the following proceedings were had):
THE COURT: Do you represent that you have impeachment testimony on this?
MR. MORAN: I represent nothing, Your Honor, except I feel that when this man takes the stand I have a right to ask him any questions that are relevant to the issues. (Italics ours)
THE COURT: All right. Sustain the objection to any further questions unless you are prepared to impeach him. If you have this Myrna Adams here to testify that he made such statements—
MR. MORAN: Is the Court precluding me from asking this question as to *224 any conversation he might have had with this person?
THE COURT: Yes. Bring the jury in.
MR. NASELLA: I wish you would instruct the jury, please, to disregard what was said about that.
MR. MORAN: Your Honor, I have a right to question him. He is on the stand and he can respond with a “yes” or “no” answer.
(Thereupon the jury returned to the courtroom, and the following proceedings were had) :
(Counsel for both parties waived polling of the jury.)
THE COURT: All right. The Court will sustain the objection and instruct the jury to disregard the last question asked of the witness by the prosecutor.”
The only legitimate purpose for asking the appellant-defendant who had taken the stand on his own behalf whether he had bragged to Myrna Adams was to lay a foundation for impeachment. F.S.A. Sec. 90.10. When the Presiding Judge inquired of the Assistant State Attorney whether he had such testimony and was so representing to the Court, the Assistant State Attorney replied “I represent nothing”. The damaging effect of the inquiry on the jury is apparent. The representative of the State Attorney’s office by his question must have led the jury to believe that such a statement had been made, and in effect the jury are invited by such a query to weigh the veracity of the appellant-defendant as against that of the State Attorney’s office.
In Gonzalez v. State, 97 So.2d 127 at p. 128 Chief Judge Kanner speaking for the District Court of Appeal of Florida, Second District said:
“The prosecuting officer properly functions in a quasijudicial capacity with reference to the accused, and it is not alone his duty to prosecute but also to see that the accused is accorded a fair and impartial trial.”
In Deas v. State, 119 Fla. 839, 161 So. 729, at p. 731 the Supreme Court of this State quoted with approval the following language from the United States Supreme Court in the case of Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 633, 79 L.Ed. 1314:
“The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor — indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.
“It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.”
The courts of this State have repeatedly demanded scrupulousness of prosecuting attorneys.
Although the judge, on the jury’s return to the courtroom, instructed the jury to disregard “the last question asked of the witness by the prosecutor”, (with *225 out setting forth what it was) we do not feel the damage was, or in fact could have been, undone. The error did affect the substantial rights of the appellant-defendant. F.S.A. § 924.33.
For these reasons we are satisfied that the ends of justice require a new trial.
Reversed.