738 So.2d 970 (1999)
Curtis CHATMON, Appellant,
v.
STATE of Florida, Appellee.
No. 98-01362.
District Court of Appeal of Florida, Second District.
June 23, 1999.
Ralph Barreira, Miami, for Appellant
Robert A. Butterworth, Attorney General, Tallahassee, and Patricia E. Davenport, Assistant Attorney General, Tampa, for Appellee.
ALTENBERND, Acting Chief Judge.
Curtis Chatmon appeals his convictions for burglary with a battery and attempted robbery, and his resulting sentences as a prison releasee re-offender.[1] We reverse the convictions and remand for new trial. Accordingly, we do not determine the constitutionality of the prison releasee re-offender punishment act. See ch. 97-239, Laws of Fla.
The dispositive issue in this case concerns the State's belated decision to call a witness that it affirmatively represented it would not call. Mr. Chatmon was charged in July 1997 with committing a home invasion on May 31, 1997. Two public defenders were appointed to represent him. The jury trial commenced in early January 1998.
About a week before trial, the assistant state attorney notified the public defenders that he had discovered a witness, Darryl Barnes, who was incarcerated and allegedly had information about one of Mr. Chatmon's alibi witnesses. Apparently because of Mr. Barnes' criminal record, the assistant state attorney explained that he did not intend to call him. Mr. Barnes was not placed on the State's witness list. As a result, the public defenders did not investigate this witness.
The jury was selected and sworn on the morning of January 5, 1998, before Judge Herring. That afternoon, the assistant state attorney notified the public defenders *971 that he had changed his strategy because Mr. Barnes had more information than he had previously realized. At that point, the State intended to call Mr. Barnes as a rebuttal witness. Actually, as the trial played out, Mr. Barnes became a key witness in the State's case in chief.
Unfortunately, the public defenders also represented Mr. Barnes. As a result, they were obligated to withdraw at a hearing on January 7. When Mr. Chatmon declined to represent himself at that hearing, the trial court appointed Ronald Toward as counsel to represent Mr. Chatmon. Mr. Toward advised the court that he was unavailable to begin the trial immediately, but would be available a few days later. Judge Herring was not available to try the case at the later date. From the record it is clear that Mr. Toward, who understandably was not fully familiar with the case, did not wish to waive any of his client's rights by moving for a mistrial at this point, and Judge Herring was concerned about double jeopardy issues if he were to declare a mistrial.
As a result, the trial resumed on January 14, 1998, before Judge Moore with the same attorney representing the State, but with a new attorney for the defendant who had not participated in jury selection or discovery. Mr. Barnes became a key witness in the case, although his possible testimony had not been discussed during jury selection. The jury returned a verdict as charged, and Mr. Chatmon received a life sentence for the burglary.
In briefing, the parties have analyzed this situation primarily to determine whether a Richardson[2] violation occurred, and if so, whether the trial court properly handled the Richardson hearing. We would emphasize that there is nothing in this record to suggest that the assistant state attorney acted other than in total good faith. He did not hide this witness. He changed his assessment of this recently discovered witness after jury selection because he did not appreciate the value of the testimony earlier.
We can understand why Judge Herring was hesitant to declare a mistrial in early January, prior to the presentation of the evidence. At the time of the Richardson inquiry, the significance of this witness was not known, and the trial court did not fully appreciate the dramatic changes that this witness would cause in the overall trial. Following the jury's verdict, Mr. Chatmon filed a timely motion for new trial pursuant to Florida Rule of Criminal Procedure 3.580. The primary ground for new trial was not weight of the evidence, but the totality of the above-described circumstances. Mr. Chatmon maintained that he did not receive a fair and impartial trial due to a cause not attributable to him, and that the trial court had erred as a matter of law by not declaring a mistrial. See Fla. R.Crim. P. 3.600(b)(8). Judge Moore denied this motion.
We recognize that the trial court is vested with broad discretion in deciding whether to grant a motion for new trial. See State v. Hart, 632 So.2d 134 (Fla. 4th DCA 1994). However, the showing required to reverse the denial of a new trial is less than that required to reverse the granting of a new trial. See Wasden v. Seaboard Coast Line R.R., 474 So.2d 825 (Fla. 2d DCA 1985). After reviewing the entire transcript, we conclude that Mr. Chatmon was prejudiced by the many unplanned changes in his trial and that the trial court abused its discretion when it denied the motion for new trial. Although a defendant is not entitled to a perfect trial, Mr. Chatmon's trial evolved into a game of musical chairs, with life imprisonment at stake, and Mr. Chatmon being the only player who could lose.
Reversed and remanded.
BLUE and NORTHCUTT, JJ., Concur.
NOTES
[1] See § 810.02(2)(a), Fla. Stat. (1997).
[2] Richardson v. State, 246 So.2d 771 (Fla. 1971).