852 So.2d 911 (2003)
Henry THORNTON, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D02-1330.
District Court of Appeal of Florida, Third District.
August 20, 2003.
Bennett H. Brummer, Public Defender and Scott W. Sakin, Special Assistant Public Defender, for appellant.
Charles J. Crist, Jr., Attorney General and Jill K. Traina, Assistant Attorney General, for appellee.
*912 Before SCHWARTZ, C.J., and FLETCHER, J., and NESBITT, Senior Judge.
SCHWARTZ, Chief Judge.
This is an appeal from a conviction after a jury trial for first degree murder. We reverse for two separate reasons, each of which would individually require a new trial.

I.
The first arises from the following question asked by the prosecutor in the attempted impeachment of one of the state's own witnesses:
[MR. TALPINS]
Q. Did Defendant Thornton talk to you about an incident, where something he did by club V.I.P. or near club V.I.P.?
A. No.
Q. Did Mr. Thornton tell you that he had to quote unquote, "Burn a nigger near the V.I.P.?" [e.s.]
It is difficult to imagine a more serious violation of the rules of evidence and due process, indeed of the rule of law itself, than this statement. Since it developed (a) that the only possible source for this comment was an alleged statement by the witness to the prosecutor himself and (b) that it was not shown to be related to the crime with which Thornton was charged, the question was in simultaneous violation of several important principles of law. These include:[1]
1. the principle of Williams v. State, 110 So.2d 654 (Fla.1959), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959), which forbids references to alleged prior unrelated offenses purportedly committed by the defendant;
2. the doctrine of Smith v. State, 414 So.2d 7 (Fla. 3d DCA 1982) and Marsh v. State, 202 So.2d 222, 224 (Fla. 3d DCA 1967), which precludes a prosecutor from asking questions which imply the existence of damaging facts which are themselves inadmissible into evidence;
The damaging effect of [such] inquiry on the jury is apparent. The representative of the State Attorney's office by his question must have led the jury to believe that such a statement had been made, and in effect the jury are invited by such a query to weigh the veracity of the appellant-defendant as against that of the State Attorney's office ... Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.
Marsh, 202 So.2d at 224; and
3. most serious of all, the rule which forbids even a prosecutorial intimation, let alone the direct accusation that the defendant used a despicable racial slur. See Echemendia v. State, 735 So.2d 555 (Fla. 3d DCA 1999); McCallister v. State, 779 So.2d 615 (Fla. 5th DCA 2001); Perez v. State, 689 So.2d 306 (Fla. 3d DCA 1997).
No trial which contains a statement like this may be permitted to stand.

II.
As a completely separate matter, the state's final argument, just as the one it made to a separate jury in the case of Thornton's co-defendant, which resulted in a reversal on that ground in Adams v. State, 830 So.2d 911 (Fla. 3d DCA 2002), was fundamentally improper. Of the depressingly long list of improprieties,[2] we *913 are content to discuss in detail only what is probably the most egregious, the suggestion that defense counsel was involved in coaching his witnesses or worse:
MR. NOVICK [prosecutor]
Mr. Pitts [defense counsel] says to you physical evidence can't lie, but witnesses, you can get them to say what you want.
Is that what happened with Karen Wilson and Spider Bechum?
They were going to say what the defense wanted them to
* * *
MR. NOVICK:to place Henry Thornton two years later at their home all day.[3]
As this court sitting en banc stated in the directly applicable decision of Lewis v. State, 780 So.2d 125, 130 (Fla. 3d DCA 2001):
The prosecutor made several attacks on defense counsel's integrity and implied that he suborned perjury:
If he could walk polka dotted pink elephants into this courtroom, he would do it ... [defense counsel] is a highly skilled attorney with razor sharp skills.
. . .
Also, did [the defendant] look like a little kid up on that witness stand yesterday? What you saw was an extremely well produced, and directed, and scripted story. And as sure as I am standing before you right now, you know that they went over, and over, and over, that story until they got it right.

. . .
If I had a bridge, I would ask him to sell it for me.
. . .
But [defense counsel] will tell you anything to get you to look away from the man who is sitting next to him, the Defendant.
. . .
Everything around this circle are the pink elephants that the Defense counsel brings before you, and it's called reasonable doubt. That's B.S.
(Emphasis added). The law is clear that attacks on defense counsel are highly improper and impermissible. See Barnes v. State, 743 So.2d 1105 (Fla. 4th DCA), review denied, 744 So.2d 457 (Fla.1999); D'Ambrosio v. State, 736 So.2d 44 (Fla. 5th DCA 1999); Del Rio v. State, 732 So.2d 1100 (Fla. 3d DCA 1999); Lewis v. State, 711 So.2d 205 (Fla. 3d DCA 1998); Cochran v. State, 711 So.2d 1159 (Fla. 4th DCA 1998); Landry v. State, 620 So.2d 1099, 1102 (Fla. 4th DCA 1993); Valdez v. State, 613 So.2d 916 (Fla. 4th DCA 1993); Ryan v. State, 457 So.2d 1084, 1089 (Fla. 4th DCA 1984); Briggs v. State, 455 So.2d 519 (Fla. 1st DCA 1984); McGee *914 v. State, 435 So.2d 854 (Fla. 1st DCA 1983); Westley v. State, 416 So.2d 18 (Fla. 1st DCA 1982); Melton v. State, 402 So.2d 30 (Fla. 1st DCA 1981); Hufham v. State, 400 So.2d 133 (Fla. 5th DCA 1981); Simpson v. State, 352 So.2d 125 (Fla. 1st DCA 1977); Thompson v. State, 318 So.2d 549 (Fla. 4th DCA 1975); Cochran v. State, 280 So.2d 42 (Fla. 1st DCA 1973). The most egregious of these comments was the one suggesting that defense counsel had "scripted," i.e. suborned, what the prosecutor was obviously arguing was the defendant's perjured testimony. Although the prosecutor is free to suggest to the jury that defendant's testimony was not credible, if the record evidence suggests that it was not, he was not free to opine that defendant's lack of candor was scripted by defense counsel.
Accord, e.g., Lewis v. State, 711 So.2d 205 (Fla. 3d DCA 1998), review denied, 725 So.2d 1109 (Fla.1998); Izquierdo v. State, 724 So.2d 124 (Fla. 3d DCA 1998). Under Lewis v. State, 711 So.2d at 205 and Lewis v. State, 780 So.2d at 125, among many other cases, this argument alone requires a new trial.[4]
In Jackson v. State, 421 So.2d 15, 16 (Fla. 3d DCA 1982), in reversing for prosecutorial misconduct, we said:
We choose to employ this decision to discuss the broader, very serious problem it exemplifies. For some time, this court has been faced with a veritable torrent of cases which have similarly involved significant prosecutorial improprieties committed by assistant state attorneys in this district. E.g., Chapman v. State, 417 So.2d 1028 (Fla. 3d DCA 1982); Gomez v. State, 415 So.2d 822 (Fla. 3d DCA 1982); Harris v. State, 414 So.2d 557 (Fla. 3d DCA 1982); Kindell v. State, 413 So.2d 1283 (Fla. 3d DCA 1982); Harper v. State, supra, 411 So.2d *915 235, 236-37 (Fla. 3d DCA 1982); McMillian v. State, 409 So.2d 197 (Fla. 3d DCA 1982); Ruiz v. State, supra, 395 So.2d 566 (Fla. 3d DCA 1981); Porter v. State, 386 So.2d 1209, 1213-14 (Fla. 3d DCA 1980); Glassman v. State, 377 So.2d 208 (Fla. 3d DCA 1979). The volume of these casesincluding multiple acts of misconduct by particular prosecutorsis so great that we can no longer believe that they represent merely isolated examples of understandable, if inexcusable, overzealousness in the heat of trial. Instead, we must suspect, however reluctantly, that the improprieties may be deliberately calculated to accomplish just what representatives of the state cannot be permittedinducing a jury to convict by unfairly prejudicing it against the defendant. It is obvious that this pattern of conduct cannot be tolerated. It is just as apparent, and just as distressing, however, that our prior efforts to eliminate the practice have proven entirely inadequate. Cf. United States v. Modica, 663 F.2d 1173, 1178 (2d Cir.1981). Strong admonitions, such as those administered in Harris, Harper, and Porter, supra, obviously do no good. Even repeated reversals on the basis of prosecutorial impropriety have apparently not achieved this result.4
* * *
4 This may bealthough we are loath even to consider the possibilitybecause some prosecutors believe that keeping a convicted defendant in prison during the sometimes lengthy appellate process is enough to chalk up a "win" even if the conviction is later reversed.
Twenty-one years have passed and nothing has changed.
Reversed and remanded.
NOTES
[1] But are not limited to.
[2] See infra note 3.
[3] The state contends that this argument was in "fair reply" to the argument of defense counsel that:

You have seen things that were placed on this board as exhibits, but one thing ladies and gentlemen I want to tell you right now, physical evidence does not lie. Testimonial evidence, words can be changed. But physical evidence does not lie. And I suggest to you that the physical evidence in this case will tell you that the witnesses did not have the opportunity to observe what they say they saw. They didn't know what they saw.
The state's claim on this issuethat the familiar argument that "physical evidence does not lie, but witnesses may be mistaken," gives rise to a fair comment that the opposing lawyer induced witnesses to lie in the particular caseis an insult to our intelligence.
[4] Additional examples include: (a) numerous references to matters not in evidence including ones which intimated the prosecutor's extra-trial knowledge of facts adverse to the defendant. See Martinez v. State, 761 So.2d 1074 (Fla.2000); D'Ambrosio v. State, 736 So.2d 44 (Fla. 5th DCA 1999); Jones v. State, 449 So.2d 313 (Fla. 5th DCA 1984), pet. for review denied, 456 So.2d 1182 (Fla.1984); (b) improper comments that evidence which could be rebutted only by the defendant was uncontradicted and uncontroverted, which amounted to impermissible comments on his failure to testify. Rodriguez v. State, 753 So.2d 29 (Fla.2000), cert. denied, 531 U.S. 859, 121 S.Ct. 145, 148 L.Ed.2d 96 (2000); Wolcott v. State, 774 So.2d 954 (Fla. 5th DCA 2001); (c) improperly vouching for the credibility of a key prosecution witness by stating that "Reverend Davis thought very carefully as a man of God." See Lewis v. State, 711 So.2d 205 (Fla. 3d DCA 1998), review denied, 725 So.2d 1109 (Fla.1998); Brown v. State, 787 So.2d 229 (Fla. 2d DCA 2001); see also Ferrell v. State, 686 So.2d 1324, 1328 (Fla. 1996)(judges and attorneys must refrain from discussing religious philosophy or engaging in improper appeals to religious principles), cert. denied, 520 U.S. 1173, 117 S.Ct. 1443, 137 L.Ed.2d 549 (1997); (d) arguing that "the only logical reasonable verdict which follows the law and the evidence which speaks the truth to this community, which the word verdict means." But see Smith v. State, 818 So.2d 707, 710 (Fla. 5th DCA 2002)(in requesting that the jury return a guilty verdict, prosecutor improperly told the jury that "[y]ou are citizens that speak on behalf of your community in rendering a verdict in this case". Cf. also Kennerdy v. State, 749 So.2d 507, 507 (Fla. 2d DCA 1999)(defendant's conviction reversed based upon state comments that defense witnesses had been "spoon-fed" their testimony and that the defendant had "convinced [two witnesses] to come in here, and I would submit to you, commit perjury"); Berkowitz v. State, 744 So.2d 1043, 1044 (Fla. 4th DCA 1999)(defendant's conviction reversed based upon prosecutor comment that a defense witness and the defendant "got together and `contrived and concocted' their story"); Henry v. State, 651 So.2d 1267 (Fla. 4th DCA 1995)(prosecutor's argument that somebody "got to" one of the defense alibi witnesses, without any evidence of any improper contact implied suborning of perjury by the defense and compelled reversal of the defendant's conviction).