CLARK, J.
 

 Jacquan Shootes appeals his conviction for two counts of aggravated assault and the denial of his motion for new trial. Because events during the jury trial de
 
 *436
 
 nied Appellant a fair trial, the conviction is reversed and the case is remanded for further proceedings.
 

 On February 15, 2007, officers of the Jacksonville Sheriffs Office Narcotics Unit (“JSO”) prepared to execute a search warrant upon a residence. The officers preferred that the home be unoccupied for the search, but they had learned from the resident of the home that Appellant was inside. Accordingly, the officers arranged for the home’s resident to call Appellant and ask him to leave the home, and when he did so, the officers would temporarily hold or detain Appellant away from the premises. Unaware of the impending search or the officers’ plans, Appellant walked away from the home and proceeded down the street. Two unmarked police cars with heavily tinted windows advanced upon Appellant and hemmed him in, one car pulling abruptly in front of, and the other behind, Appellant. As the cars came to a halt around Appellant, an officer jumped out of one car with what Appellant described as a “big old gun.” Other officers exited as well, wearing “tactical gear.” The officers testified that they shouted “Police!” as they exited the vehicles, but Appellant denied ever hearing any announcement from the officers.
 

 In reaction to the situation, which Appellant testified he assumed was an attack by robbers, he drew a handgun and fired at the officers. The officers returned fire and Appellant was shot, subdued and arrested. Appellant testified that he did not realize until after the shooting stopped that the men were not criminals attacking him but were in fact police officers, in essence advancing a theory of self-defense. There was conflicting evidence about the officers’ clothing and whether their clothing and appearance should have alerted Appellant to them identities as police officers. The visual presentation of the officers was thus a feature of the trial and was pivotal to Appellant’s theory of defense.
 

 The first three days of the jury trial proceedings were held in one courtroom, but upon arriving at the courthouse for the final day of trial, defense counsel discovered that the proceedings had been moved to a larger courtroom. No explanation for this change of location is contained in the record of the trial proceedings.
 

 Courtroom observers stated — via affidavits — that during those final stages of the trial, one side of the gallery began filling with officers of the JSO. According to these affiants, the officers sat together in the front rows of the gallery, closest to the jury. One affiant stated that there were between 35 and 50 officers in the gallery, and the other three affiants stated that between 50 and 70 officers attended. The affiants consistently swore that the officers were identifiable as JSO personnel because some wore the formal blue JSO uniforms and some wore undercover uniform shirts with bright yellow letters reading “Narcotics Officer, Police, Jacksonville Sheriffs Office” and insignia of the JSO.
 

 In his motion for new trial, Appellant asserted, among other things, that his Sixth Amendment right to a fair trial was denied by the presence of the large number of JSO officers in the courtroom on the last day of trial.
 
 See
 
 Fla. R.Crim. P. 3.600(b)(8). Appellant submitted the four affidavits referenced above, which the State refuted only by stating that no one in the gallery misbehaved or disrupted the proceedings. During the hearing on the motion, the trial judge noted for the record that half or more of the spectators were JSO officers, that there were “25 or more” officers present, that some wore clothing marked “Police” or “Narcotics, Jacksonville Sheriffs Office” and that none of the spectators, officers or civilians, made gestures, chattered, or otherwise distracted
 
 *437
 
 the jury or the court. Defense counsel conceded that he was not distracted by the spectators and made no objection at the time because he was focused on presenting his case. Counsel for the State asserted that all of the officers present were friends and coworkers of the officers involved in the incident, with a right to attend the public proceedings in support of their fellow officers. Appellant’s motion for new trial was denied.
 

 We first address the preservation for review of Appellant’s claim that the courtroom scene presented to the jurors denied him a fair trial. Generally, a litigant is required to object to an error at the time the error occurs in the tidal in order to obtain appellate review of the issue. § 924.05(3), Fla. Stat.;
 
 F.B. v. State,
 
 852 So.2d 226 (Fla.2003). This “contemporaneous objection” rule “places the trial judge on notice that error may have been committed, and provides him an opportunity to correct it at an early stage of the proceedings.”
 
 Castor v. State,
 
 365 So.2d 701, 703 (Fla.1978). The purpose of the rule is to eliminate “[d]elay and unnecessary use of the appellate process resulting] from a failure to cure early that which must be cured eventually.”
 
 Id.
 

 While the rule is referred to as the “contemporaneous objection” rule, it does not always require the immediacy connoted by the term “contemporaneous.”
 
 See Mercury Ins. Co. of Fla. v. Moreta,
 
 957 So.2d 1242 (Fla. 2d DCA 2007)(motion for new trial based on unobjected-to closing arguments preserved issue for appeal). In this case, counsel had no opportunity to object at the time the officers filed in to the courtroom because he was unaware of what was occurring in the gallery behind him. As soon as counsel learned of the courtroom conditions, he filed the motion for new trial. The trial court considered the issue and denied the motion on the merits. This satisfied the purpose of the contemporaneous objection rule and was sufficient to preserve the issue for appeal. § 924.051(l)(b), Fla. Stat.;
 
 see also White v. Consol. Freightways Corp. of Delaware,
 
 766 So.2d 1228 (Fla. 1st DCA 2000)(motion for mistrial after all opening statements presented and jury had been excused; trial court ruled on motion, satisfying purpose of contemporaneous objection rule).
 

 Even if the challenge to the presence of the law enforcement personnel in the gallery had not been properly preserved, an exception to the contemporaneous objection requirement applies “where the error is fundamental.”
 
 J.B. v. State,
 
 705 So.2d 1376, 1378 (Fla.1998). It is well settled that “for an error to be so fundamental that it can be raised for the first time on appeal, the error must be basic to the judicial decision under review and equivalent to a denial of due process.”
 
 State v. Johnson,
 
 616 So.2d 1, 3 (Fla.1993). In order for error pertaining to presentations to the jury to be fundamental error, such presentations must be so prejudicial as to taint the jury’s determination.
 
 See Thomas v. State,
 
 748 So.2d 970 (Fla.1999);
 
 Walls v. State,
 
 926 So.2d 1156 (Fla.2006) (prosecutorial comments to jury during closing argument not fundamental error unless prejudice severe enough to taint jury’s recommended sentence).
 

 It has long been recognized that the right to a jury trial is one of the most precious and fundamental rights of the American justice system. “The right to a fair trial is a fundamental liberty.”
 
 Estelle v. Williams,
 
 425 U.S. 501, 503, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). Both federal and Florida due process clauses prohibit the deprivation of persons’ life, liberty, or property without due process of law. U.S. Const, amend. V & amend. XIV; art. I, § 9, Fla. Const. Both federal and Florida constitutions entitle those accused of
 
 *438
 
 crimes to “a speedy and public trial, by an impartial jury.” U.S. Const, amend. VT; art. I, § 16, Fla. Const.
 

 It is also firmly established that “[cjentral to the right to a fair trial ... is the principle that ‘one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion ... or other circumstances not adduced as proof at trial.’”
 
 Holbrook v. Flynn,
 
 475 U.S. 560, 567, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986) (citing
 
 Taylor v. Kentucky,
 
 436 U.S. 478, 485, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978)). As stated in
 
 Woods v. Dugger,
 
 923 F.2d 1454, 1456 (11th Cir.1991) and by many other courts, the Fourteenth Amendment incorporates the essence of the Sixth Amendment right to be tried by a panel of impartial, indifferent jurors whose verdict must be based upon the evidence developed at the trial.
 

 In furtherance of a jury verdict based solely on the evidence introduced at trial, “due process requires a trial court to safeguard against intrusion of factors into the trial process that would tend to subvert its purpose.”
 
 Estes v. Texas,
 
 381 U.S. 532, 560, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965) (Warren, C. J., concurring). Judges are not free to disregard factors external to the evidence, such as the atmosphere in and around the courtroom, which may influence a jury’s verdict. The Sixth Amendment imposes upon trial courts an affirmative obligation “to minimize any risk of ‘unacceptable factors’ affecting the accused’s right to have a fair trial.”
 
 Woods v. Dugger,
 
 923 F.2d at 1454, n. 11. Courts have “an obligation to ensure that the trial is a fair process and most certainly ... an obligation to protect jurors from any possibility of influence or intimidation by the appearance of a [uniformly outfitted] sea of spectators.”
 
 U.S. v. Yahweh,
 
 779 F.Supp. 1342 (S.D.Fla.l992)(pre-trial order allowed sixty supporters of multiple defendants to attend jury trial, but not dressed in white turbans and flowing robes of defendants’ religious group).
 

 The presence of courtroom observers wearing uniforms, insignia, buttons, or other indicia of support for the accused, the prosecution, or the victim of the crime does not automatically constitute denial of the accused’s right to a fair trial.
 
 Holbrook v. Flynn,
 
 475 U.S. 560, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986) (four uniformed officers seated immediately behind defendant);
 
 Carey v. Musladin,
 
 549 U.S. 70, 127 S.Ct. 649, 166 L.Ed.2d 482 (2006) (fair trial not denied by wearing of buttons with photo of victim by some members of victim’s family). However, there are situations where the atmosphere in the courtroom might infringe on the defendant’s right to a fair trial. When this issue is raised, a case-by-case approach is required to allow courts to consider the “totality of the circumstances.”
 
 Sheppard v. Maxwell,
 
 384 U.S. 333, 352, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966);
 
 Holbrook v. Flynn,
 
 475 U.S. 560, 569, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986).
 

 Considering the circumstances, a defendant claiming he was denied a fair trial must show “either actual or inherent prejudice.”
 
 Woods v. Dugger,
 
 923 F.2d at 1457. Actual prejudice requires some indication or articulation by a juror or jurors that they were conscious of some prejudicial effect.
 
 See Pozo v. State,
 
 963 So.2d 831 (Fla. 4th DCA 2007). Inherent prejudice, on the other hand, requires a showing by the defendant that there was an unacceptable risk of impermissible factors coming into play.
 
 Holbrook v. Flynn,
 
 475 U.S. at 570, 106 S.Ct. 1340; Woods
 
 v. Dugger,
 
 923 F.2d at 1457.
 

 
 *439
 
 Applying the unacceptable risk of impermissible factors test to the particular circumstances of this case, the trial court’s denial of the motion for new trial was an abuse of discretion and must be reversed.
 
 See
 
 Fla. R.Crim. P. 3.600(b)(8) (court shall grant new trial if, “[f]or any other cause not due to the defendant’s own fault, the defendant did not receive a fair and impartial trial.”). The appearance of the considerable number of JSO officers in various modes of official Sheriffs Office attire presented an unacceptable risk of impermissible factors coming into play.
 

 The number of spectators identifiable as law enforcement personnel was substantial in this case, comparable to the number of officers in
 
 Woods v. Dugger,
 
 923 F.2d 1454 (11th Cir.1991) — where “about half of the spectators” in the overflowing gallery wore prison guard uniforms — and distinguishes this case from those cases involving the appearance of a relatively few officers visible in the gallery.
 
 Compare Holbrook v. Flynn,
 
 475 U.S. 560, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986) (supplemental security of four officers in trial of six defendants not inherently prejudicial);
 
 Davis v. State,
 
 223 S.W.3d 466 (Tex.App.2006) (no inherent prejudice when up to eight uniformed officers sat in gallery over course of trial, vastly outnumbered by civilian spectators; no indication that officers “gravitated towards” jury or that prosecution “had a role in the presence of the officers during trial”).
 

 The record also shows that in Appellant’s trial, the officers sat together as a group in the seats closest to the jury, and they were not present as added security or to provide testimony.
 
 Compare Pratt v. State,
 
 228 Ga.App. 567, 492 S.E.2d 310 (1997) (no inherent prejudice denying fair trial where twenty-five uniformed correctional officers in gallery to observe closing arguments were in back of room, away from jury, and several had been witnesses sequestered during testimony phase of trial);
 
 Hill v. Ozmint,
 
 339 F.3d 187 (4th Cir.2003)(no inherent prejudice when nothing in record indicated courtroom was filled with “an array of police officers”; officers present were “dispersed throughout the courtroom”; at least seventeen of the officers had been witnesses). Where a substantial number of uniformed or otherwise identifiably garbed officers are not present for the purpose of preserving order in the courtroom or to provide testimony in the proceedings, a jury is susceptible to the impression that the officers are there “to communicate a message to the jury.”
 
 Woods v. Dugger,
 
 923 F.2d at 1459. In
 
 Woods v. Dugger,
 
 the court concluded that in that case, “[t]he jury could not help but receive the message” that the officers wanted a conviction.
 
 Id.
 
 at 1460.
 
 See also, Norris v. Risley,
 
 878 F.2d 1178 (9th Cir.1989) (unacceptable risk of improper factors where, during rape trial, twenty to twenty-five spectators wore buttons stating “Women Against Rape”). The only messages a jury should be sent are those from the judge, from evidence presented and admitted, and from proper argument of counsel.
 

 Finally, unlike cases where clothing or accessories worn by spectators might merely have shown support for the victim or another party in general, in this case the officers’ apparel was actually a feature of the trial, directly related to Appellant’s theory of self-defense. Appellant testified that at the time he fired on the officers, he did not recognize them as such, that he believed he was acting in self-defense, and that only after the confrontation was over did he realize they were not robbers or worse. Witnesses for the State testified that the officers wore tee shirts, vests, or other official apparel with visible identifying markings or letters, but whether the markings were visible to Appellant was in
 
 *440
 
 dispute. Under these circumstances, the courtroom scene presented to the jurors of dozens of officers literally clothed with the authority of the JSO could not only have sent the jury a message of official interest and desire for a conviction, but the display of various formal and informal JSO uniforms could easily have been seen by the jury as a live demonstration of the appearance of the officers involved in the altercation with Appellant. Together with the conspicuous crowd of officers present, in close proximity to the jury, the display of undercover police clothing created an unacceptable risk that the jury’s determinations of the credibility of witnesses and findings of fact would be tainted by impermissible factors not introduced as evidence or subject to cross-examination.
 

 The totality of the circumstances in the courtroom on the final day of the jury trial resulted in an unacceptable risk of impermissible factors influencing the jury’s decision and thus constituted inherent prejudice to Appellant’s right to a fair trial resulting in fundamental error. This deprivation of a fair trial and of due process was raised as soon as defense counsel became aware of the situation and therefore was properly preserved for appeal by the defense’s motion for new trial. While a trial court is vested with “broad discretion in deciding whether or not to grant a motion for new trial ... the showing required to reverse the denial of a new trial is less than that required to reverse the granting of a new trial.”
 
 Chatmon v. State,
 
 738 So.2d 970, 971 (Fla. 2d DCA 1999). After reviewing the record in this case, we conclude that Appellant’s fundamental right to a fair and impartial trial, including a verdict based solely upon the evidence developed at the trial, was prejudiced and that the trial court abused its discretion in denying the motion for new trial.
 

 Accordingly, the conviction is REVERSED and this case is REMANDED.
 

 WOLF and WEBSTER, JJ„ concur.