31 So.3d 847 (2010)
Amy STEPHENSON, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D08-1107.
District Court of Appeal of Florida, Third District.
March 3, 2010.
Rehearing and Rehearing En Banc Denied April 21, 2010.
Michael B. Cohen, Fort Lauderdale and Eileen I. Landy, Melbourne, for appellant.
Bill McCollum, Attorney General, and Linda S. Katz, Assistant Attorney General, for appellee.
Before SHEPHERD and SALTER, JJ., and SCHWARTZ, Senior Judge.
SCHWARTZ, Senior Judge.
Amy Stephenson appeals from her conviction and twenty-five year sentence[1] for aggravated manslaughter of a child, a first degree felony, following a jury verdict finding that the death of her thirteen-month old daughter was caused "by the neglect of Defendant, a caregiver." § 782.07 Fla. Stat. (2007).
*848 The State alleged and the jury apparently agreed that the child, who had suffered serious health problems since her premature birth and throughout her short life,[2] died as a result of the mother's conduct in depriving the child of food and other care. Although there was sufficient evidence to support the verdict, the case was hotly contested on numerous issues, including whether any alleged misconduct was the cause of the child's death[3] and the degree of the crime, if any, involved in the mother's care of the child, particularly, whether she may have been guilty of a lesser offense such as neglect of a child by culpable negligence with great bodily harm, a second degree felony. See § 827.03(3)(b) (2007).
It is in this context that, without considering any of the other issues presented,[4] we reverse on the ground that, although there was no appropriate objection, fundamental error occurred when the prosecutor commented on cross-examination and again during final argument on the fact that in the course of her pregnancy, the mother had contemplated aborting the decedent child. The transcript reveals the following:
Q: [Prosecutor] Let's go back to when you were in the hospital. When you were in the hospital after delivering Jasmine, you had occasion to speak to Colleen Cullen [a social worker employed by Baptist Hospital]; isn't that correct?
[Defense counsel]: Your honor
A: [defendant] Not that accurate, not.
Q: What did you
A: I had thought about it.
Q: You had thought about terminating your pregnancy; is that correct?
A: When I first learned that I was pregnant.
Q: And that's part of the reason you had late prenatal care; isn't that correct?

*849 A: No.
Emphasizing this point in closing, the prosecutor stated:
Then, of course, the defendant testified. She admitted at first she was ambivalent about whether or not she wanted this baby at all.
The cases tell usas if we needed to be toldthat "abortion is one of the most inflammatory issues of our time," Cook v. State, 232 Ga.App. 796, 503 S.E.2d 40, 42 (1998), and, more important, that one who takes or even approves of this course is very adversely regarded by many in our society. Accordingly, numerous decisions reverse convictions after trials which improperly implicate that issue, including several, as in this case, which are necessarily based on a finding of fundamental error in the absence of proper preservation. See Billett v. State, 317 Ark. 346, 877 S.W.2d 913, 915 (1994) (approving decision not to allow evidence of witness's prior abortions and defendant's condemnation of her to show bias, where bias had otherwise been shown and "any probative value was clearly outweighed by the danger of unfair prejudice"); Brock v. Wedincamp, 253 Ga. App. 275, 558 S.E.2d 836, 842 (2002) (observing "even if evidence of the decedent's abortions and adoptions and sex life were somehow relevant, courts must consider whether `its probative value is substantially outweighed by the risk that its admission will create substantial danger of undue prejudice or of confusing the issues or of misleading the jury).'" (quoting Metro. Property & Ins. Co. v. Shepherd, 166 Ga. App. 300, 304 S.E.2d 74 (1983) (citation and punctuation omitted.)); Collman v. State, 116 Nev. 687, 7 P.3d 426, 436 (2000) (agreeing that information about abortion "was a collateral matter and the minimal value of it was `overwhelmingly outweighed' by the danger of unfair prejudice, confusing the issues, and misleading the jury."); Schneider v. Tapfer, 92 Or. 520, 180 P. 107, 108 (1919) (testimony that defendant had approved of abortion held irrelevant to issues involved and "was simply evidence which tended to debase and degrade the defendant.... [C]ertainly none could have been offered which was more likely to inflame and prejudice the minds of the jury against the defendant"); see also Hudson v. State, 745 So.2d 1014, 1016 (Fla. 5th DCA 1999) (concluding "that the inflammatory evidence of two prior abortions certainly contributed to Hudson's conviction" and thus should not have been admitted); Wilkins v. State, 607 So.2d 500, 501 (Fla. 3d DCA 1992) (calling evidence that the defendant and his wife considered having an abortion of the baby-victim "excludable ... as ... an impermissible assault on the defendant's character and was otherwise irrelevant and inflammatory"). Cf. People v. Harris, 633 P.2d 1095, 1100 (Colo.App.1981) (concluding that admission of evidence that defendant suggested that wife's pregnancy be aborted (in trial for son's murder) not sufficiently prejudicial to warrant retrial, but acknowledging "it would have been better to exclude some of such evidence").
In addition, there are many cases in which the injection of other matters which are similarly objectionableand sometimes significantly less sohas resulted in reversal, again often in the absence of appropriate objection below. Shootes v. State, 20 So.3d 434 (Fla. 1st DCA 2009) (concluding that defendant's right to an impartial trial was prejudiced by large number of law enforcement personnel in courtroom on last day of trial); Perez v. State, 689 So.2d 306, 307 (Fla. 3d DCA 1997) (observing that it is "highly improper to interject even a reference to, let alone an accusation of racism which is neither justified by the evidence nor relevant to the issues"); Gonzalez v. State, 588 So.2d *850 314, 315 (Fla. 3d DCA 1991) (finding fundamental error, in part, based on reference to defendant as a "sexual pervert"); see also Gluck v. State, 62 So.2d 71, 73 (Fla. 1952) (observing "[n]either [defendant's] religion, character, alleged prior offense, nor occupation were proper issues in the case ... [and that prosecutor's comments] were highly prejudicial and even if not calculated to, undoubtedly had an influence upon the jury"); Cordoba v. Rodriguez, 939 So.2d 319, 321-22 (Fla. 4th DCA 2006) (deeming fundamental error the admission of a physician's statement that an article (an outside source) that stated that "99 percent of automobile accidents result in lawsuits" was the basis for his conclusion that plaintiffs had not sustained permanent injuries, and observing "`[f]undamental error,' for purposes of granting a new trial, means an error which deprives a party of a fair trial or an error which objection or a curative instruction could not correct; such error gravely impairs the dispassionate and calm consideration of the evidence and merits by the jury."); Thornton v. State, 852 So.2d 911, 912 (Fla. 3d DCA 2003) (prosecutor's attempted impeachment asking whether defendant said he had to "[b]urn a n----r" improperly referred to unrelated offenses and implied existence of inadmissible damaging facts); MCI Exp., Inc. v. Ford Motor Co., 832 So.2d 795, 800-02 (Fla. 3d DCA 2002) (characterizing as unfairly prejudicial, plaintiff CEO's reference to "Goddamn Cubans," which defendant exploited by taking phrase out of context, disparaging CEO's character, and exacerbating the phrase's prejudicial impact); McCallister v. State, 779 So.2d 615, 615-16 (Fla. 5th DCA 2001) (concluding that it was error to admit defendant's statement "[t]hat n----r is dead; when I get out, he better hope I never get out," made during transport after arrest); DeFreitas v, State, 701 So.2d 593, 601 (Fla. 4th DCA 1997) (concluding that comparison of case to O.J. Simpson case "coupled with reference to [defendant] as a stalker, possessive ex-boyfriend who disapproved of his ex-girlfriend's friends" violated rule against inflammatory argument); Kaas v. Atlas Chemical Co., 623 So.2d 525 (Fla. 3d DCA 1993) (granting defendant's motion for new trial where plaintiff's counsel during closing called witness a "liar"); Reynolds v. State, 580 So.2d 254, 256 (Fla. 1st DCA 1991) (concluding that despite lack of objection, "prosecutor's racial comments, which focused on the crucial issue of consent and improperly injected the issue of race ... were so egregious and so pervasive that Reynolds was deprived of his right to a fair trial.").
Speaking more generally,
for evidence to be admissible, it must be relevant. See § 90.402, Fla. Stat. (2002); Gore v. State, 719 So.2d 1197, 1199 (Fla. 1998). However, when the probative value of relevant evidence is substantially outweighed by the danger of unfair prejudice, it is inadmissible. § 90.403, Fla. Stat. (2002). "`Where a trial court has weighed probative value against prejudicial impact ... an appellate court will not overturn that decision absent a clear abuse of discretion.'" Sims v. Brown, 574 So.2d 131, 133 (Fla.1991) (quoting Trees v. K-Mart Corp., 467 So.2d 401, 403 (Fla. 4th DCA 1985)).
Jomolla v. State, 990 So.2d 1234, 1238 (Fla. 3d DCA 2008).
Here, the evidence at issue failed in both regards. It was not only not relevant, but any conceivable relevance was substantially outweighed by the danger of unfair prejudice to the defendant. At the trial, Stephenson's attorneys portrayed her as an inexperienced young woman who was let down by the system in caring for her premature and unhealthy baby. Counsel maintained that despite the mother's good *851 efforts, the baby had serious and continuing health problems from the time of her birth. The state's position was that the baby died of malnutrition, the result of the mother's neglect. There was evidence both of the child's fragile condition, and the mother's having missed doctor's appointments and the like.
That the existence, if any, the nature and the extent of the mother's culpability presented close questions and the determinative nature of the jury's perception of this mother in resolving those questions made the abortion issue all the more deleterious to the mother's chance at a fair trial. See Bryant v. State, 787 So.2d 904, 906 (Fla. 2d DCA 2001) (reversing where State was improperly allowed to offer collateral offense evidence of pornographic images and observing "[t]his was a close case with credibility being a primary issue"); DeFreitas, 701 So.2d at 599 (concluding that prosecutorial misconduct, "deprived the defendant of a fair trial in this otherwise close case" and observing that "said conduct may very well have tipped the scales in favor of the State."); see also Fike v. State, 4 So.3d 734, 739 (Fla. 5th DCA 2009) (finding fundamental error, observing "as this case turned solely on M.S.F.'s credibility. There was no physical evidence to corroborate her version of events, nor was there any confession or admission. This was a swearing match between Fike and M.S.F."); Davis v. State, 718 So.2d 874, 877 (Fla. 5th DCA 1998) (reversing conviction for exploitation of an elderly person, holding that marginal value of victim interview to show incompetency was outweighed by danger of unfair prejudice and concluding "[s]howing [the evidence at issue] lobbed the proverbial skunk into the jury box, and deprived the defendant of a fair trial.").
The state cites Walker v. State, 707 So.2d 300 (Fla.1997). In that case, however, Walker had told the mother-to-be victim that he was willing to pay for an abortion and that "if she insisted to mess up his life or ruin his life, she knew he could make her life miserable." Id. at 309. The court concluded that Walker's statements were a "significant piece of evidence... that Walker had a motive to murder the victims [the mother and child]." Id. at 310. Thus, the court reasoned, the balancing test required by section 90.403, Florida Statutes, was deemed properly to result in admission of Walker's statements.
In this case, in sharp contrast, not only is there no permissible relevance to the mother's consideration of abortion to the legal issues at hand, but its only arguable relevance makes its admission all the more inappropriate: it is apparently the thought that a person who considers abortion is more likely to have killed the child not aborted. This makes the familiar issue of the admission of prior convictions, which is precluded because the jury may (probably correctly) conclude that one who has been convicted before is guilty now, pale into insignificance. Simply put, the evidence that Stephenson, considered aborting her pregnancy did not tend to "prove or disprove a material fact," § 90.401, Fla. Stat. (2007); it tended to prove only a very harmful immaterial one.
In accordance with these authorities, we cannot but conclude that the references to this issue require a new trial. See Pait v. State, 112 So.2d 380, 384 (Fla.1959) ("[T]here are situations where the comments of the prosecutor so deeply implant seeds of prejudice or confusion that even in the absence of a timely objection at the trial level it becomes the responsibility of this court to point out the error and if necessary reverse the conviction."); Rahmings v. State, 425 So.2d 1217, 1217 (Fla. 2nd DCA 1983) ("highly prejudicial and inflammatory remarks require reversal *852 unless the appellate court can determine from the record that the improper statements did not prejudice the defendant"); Chavez v. State, 215 So.2d 750, 750 (Fla. 2nd DCA 1968) ("unless this court can determine from the record that the conduct or improper remarks of the prosecutor did not prejudice the accused the judgment must be reversed" (quoting Pait, 112 So.2d at 385)).
The judgment and sentence are reversed and the cause remanded for a new trial.
Reversed.
SHEPHERD, J., (concurring).
I concur in the decision of the majority in this case. I write to underscore the apparent fact, evident from the quoted testimony, that the defendant in this case considered having an abortion long before she knew the fetus was malformed and the baby likely would be born with serious medical problems. New trials should not be lightly granted. See Warner v. Goding, 91 Fla. 260, 107 So. 406 (1926). However, in this case, where the prosecutor exacerbated the prejudicial testimony in final argument, probably unnecessarily given the quantity of incriminating evidence in the record, I believe the error was compounded to such a degree it was not remediable through a curative instruction, and thus reversibly impaired the dispassionate consideration of evidence by the jury. See Hernandez v. Feliciano, 890 So.2d 401 (Fla. 5th DCA 2004); DeFreitas v. State, 701 So.2d 593 (Fla. 4th DCA 1997); Anderson v. Watson, 559 So.2d 654 (Fla. 2d DCA 1990).
The defense and the majority cite to a wide-ranging list of cases in which evidence of abortion or thoughts of abortion was found to outweigh any probative value with its prejudicial effects. In light of the State's theory of the case here, as well as their ultimate concession during oral argument as to the irrelevance of the evidence to the issues at hand, I would agree that this case falls among that grouping. This is not to say that any and all mention of abortion or its contemplation would serve to vitiate my confidence in any jury verdict of conviction following the use of this evidence. Should the State manage to meet its burden to show the probative worthiness of its evidence in this regard, nothing in this opinion should serve to declare such a showing improper as a matter of law. See State v. Williams, 992 So.2d 330 (Fla. 3d DCA 2008).
With this caveat, I concur in the decision of the majority.
NOTES
[1] The defendant was twenty five years of age and had no previous record.
[2] At birth, on August 18, 2005, the premature infant weighed one pound, three ounces, and according to the testifying physicians suffered from a multitude of medical problems, including retinopathy of prematurity, bronchopulmonary dysplasia of the lungs, intraventricular bleed, or bleeding in the brain, and a heart problem called patent ductus arteriosus, for which she underwent successful surgery. The baby remained in the hospital for the first six months of her life, and required continued special care from the time she was able to go home until her death. A February 7, 2006, doctor's visit recorded the baby's weight at eight pounds twelve ounces; however her weight at the time of her death, September 8, 2006, was six pounds, nine ounces.
[3] Two competing experts testified. For the State, the medical examiner in Monroe County testified that the baby was devoid of fat cells, and that while she had increased in length, she had decreased in weight, signifying malnutrition which had not happened suddenly and in turn, led to his conclusion that the baby's death was the result of chronic malnutrition from neglect. The mother's expert, a former director of the pediatrics critical intensive care unit at Jackson Memorial Hospital, testified that he believed that, as the consequence of the baby's numerous medical problems, some combination of vomiting, obstruction of her airway, a seizure, hypoxia, low oxygen, and then respiratory arrest had occurred, ultimately leading to cardiac arrest. Therefore, he did not believe the baby starved to death, but rather was malnourished in a medical sense and then had a terminal event.
[4] The most substantial of these is the claim that a change of venue should have been granted based on a Key West Citizen article that appeared on the day of the trial, which was called "Mother Stands Trial in Starving Baby's Death," and which contained a lengthy, mostly inaccurate attack upon the appellant. Although the issue was and is a close one, in view of the trial judge's careful handling of the issue, we doubt that an abuse of discretion has been demonstrated. In any event, it is unnecessary to directly decide the point because the circumstances will certainly not reoccur before the new trial we now order.