947 So.2d 1270 (2007)
Dennis Markly BRYAN, Appellant,
v.
STATE of Florida, Appellee.
No. 5D05-3363.
District Court of Appeal of Florida, Fifth District.
February 2, 2007.
*1271 J. Peyton Quarles of Zimmet & Quarles, P.L., Daytona Beach, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Ann M. Phillips, Assistant Attorney General, Daytona Beach, for Appellee.
EVANDER, J.
Appellant and co-defendant David Baumann ("Baumann") were alleged to have robbed a Subway shop in St. Augustine. During the robbery, a Subway employee was shot and killed. Appellant was indicted on one count of first degree murder (both premeditated and felony murder) and one count of armed robbery with a firearm or other deadly weapon. The state sought the death penalty. A jury found appellant guilty as charged on both counts, and recommended life imprisonment without the possibility of parole on the murder count. Appellant was ultimately sentenced to two consecutive terms of life imprisonment.
Appellant raises two points on appeal. First, he contends the trial court erred by allowing the jury to receive evidence of crimes not charged in the indictment with the result that they became the feature of the trial. We disagree.
The decision to admit collateral crime evidence is reviewed by an abuse of discretion standard. LaMarca v. State, 785 So.2d 1209 (Fla.2001). In this case, the trial court entered a thorough written order detailing how the evidence of the collateral crimes was inextricably intertwined with the crime charged. Griffin v. State, 639 So.2d 966 (Fla.1994). Furthermore, evidence of the collateral crimes did not become a feature of the trial. McLean v. State, 934 So.2d 1248 (Fla.2006). We find no abuse of discretion.
Second, appellant argues the trial court erred by denying his motion to suppress his confession. Appellant contends his confession was obtained in violation of his Sixth Amendment right to counsel. Again, we disagree. The robbery of the St. Augustine Subway occurred on August 14, 2000. On November 11, 2000, appellant and Baumann were arrested in Williamsburg, Kentucky, in conjunction with the alleged robbery of a Super 8 Motel located in that city. Evidence seized during the arrest suggested appellant *1272 and Baumann had committed a crime in St. Augustine. The St. Johns County, Florida, Sherriff's Office was contacted. On November 29, 2000, two detectives from the St. Johns County Sherriff's Office arrived in Kentucky to question appellant and Baumann regarding the robbery/murder committed at the St. Augustine Subway. Appellant was being held in a jail in London County, Kentucky. Special Agent Wade Raspberry of the Bureau of Alcohol, Tobacco & Firearms ("ATF") transported appellant to an ATF interview room to be questioned by the St. Johns County detectives. Shortly after the interview began, appellant invoked his right to counsel. The two detectives immediately ceased the interview and left the room.
Agent Raspberry, acting on his own and not at the direction of the St. Johns County detectives, returned to the interview room. He asked appellant what happened and appellant responded that he wanted an attorney present during his interview. Raspberry replied "O.K." and began to prepare appellant to be transported back to the jail. After an unsuccessful attempt to telephone his parents, appellant asked Raspberry, "Where are we going?" Raspberry replied that he was going to take appellant back to the jail. Then, in apparent reference to the two detectives, appellant asked, "Where are they going?" Raspberry told appellant the detectives were going back to Florida, but they were first probably going to interrogate Baumann. Appellant then asked Raspberry, "What are they going to talk to him about?" Raspberry responded "the same thing they were trying to talk to you about." Raspberry also told appellant that the detectives would probably believe Baumann's version of the story and that his (appellant's) "ship sailed" without him. At that point, appellant insisted Raspberry have the St. Johns County detectives brought back to the interview room so that appellant could tell "his side" of the story.
Raspberry complied with appellant's request. The two detectives readvised appellant of his Miranda rights. Appellant further signed an affidavit averring that he had requested the detectives' return, that he wanted to waive his right to an attorney after having previously invoked such right, and that his decision to speak to the detectives was entirely voluntary. Appellant then proceeded to make the incriminating statements which were the subject of his motion to suppress.
In Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the Supreme Court held that where a suspect invokes his right to counsel, he is not subject to further interrogation by police "until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." Edwards, 451 U.S. at 484-485, 101 S.Ct. 1880.
The Edwards decision was clarified in Oregon v. Bradshaw, 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983). In a plurality opinion, the Bradshaw Court set forth a two-step process which is to be utilized where a suspect gives a statement to police without counsel being present, although the suspect had initially invoked his right to counsel. First, the trial court must find the suspect initiated the subsequent conversation with law enforcement. Second, the trial court must find, based on the totality of the circumstances, the suspect knowingly and voluntarily waived his right to counsel. In Bradshaw, the Court found the defendant had initiated further conversation with the police when he asked, "Well, what is going to happen to me now?" The Court noted that the defendant's question "evinced a willingness and a desire for a generalized discussion about the investigation." Bradshaw, 462 U.S. at 1045-1046, 103 S.Ct. 2830.
In Francis v. State, 808 So.2d 110 (Fla. 2001), police officers terminated an interview *1273 with Francis immediately after he invoked his right to counsel. Approximately three and one-half hours later, Francis told an officer he wanted to talk to police. The officer advised Francis that he could not talk to the police because he had previously requested an attorney. Francis replied that he wanted to talk about the case and that he no longer wanted a lawyer. The statements subsequently made by Francis, without counsel being present, were determined to be admissible. Francis, 808 So.2d at 125-128.
In the present case, we agree with the trial court's conclusion that it was appellant, not Raspberry, who initiated the conversation which eventually led to appellant's decision to give a statement to the St. Johns County detectives. Although Raspberry had asked appellant what had happened between appellant and the two detectives, he did not ask any other questions after appellant advised him that appellant had wanted counsel present during any interrogation. Subsequently, it was appellant who proceeded to ask questions "evincing a willingness and a desire for a generalized discussion about the investigation." The evidence further supported the trial court's conclusion that, based on the totality of the circumstances, appellant had knowingly and voluntarily waived his right to counsel after initially invoking such right.
As we noted in State v. Evans, 462 So.2d 596, 599 (Fla. 5th DCA 1985), the law recognizes a defendant's right to voluntarily change his mind after he has invoked his right to be questioned with counsel present.
AFFIRMED.
GRIFFIN and PALMER, JJ., concur.