ORFINGER, J.
 

 Kyle Fike appeals his convictions of one count of sexual battery on a victim under 12 years of age and two counts of lewd or lascivious molestation on a victim under 12 years of age. Fike argues that the trial court erroneously admitted Williams
 
 [1]
 
 rule evidence at trial regarding a prior incident of alleged sexual molestation. We agree and reverse.
 

 Prior to trial, the State filed a
 
 Williams
 
 rule notice, advising Fike of its intention to call R.S.J. as a witness to testify that between October 1993 and February 1994, Fike sexually battered him. At a pretrial hearing, R.S.J. testified that he was the younger brother of Fike’s ex-wife. Between the time that he was five and seven years old, Fike would babysit him while
 
 *736
 
 his sister took college classes. At that time, Fike forced him to perform oral sex on him approximately ten times. After hearing argument, the court allowed the evidence, finding that R.S.J.’s testimony was reliable and the probative value outweighed the prejudicial effect of the evidence.
 
 [2]
 

 At trial, the jury heard that Fike is M.S.F.’s father, and is divorced from her mother. M.S.F. was living with her mother and stepfather in Melbourne. One Friday in May 2005, M.S.F., who was eleven years old at the time, went to an Orlando hotel where Fike was staying to spend the weekend. The hotel room only had one bed. M.S.F. testified that on the first night of her visit, she fell asleep while she and Fike were watching a movie. She awoke to find Fike shoving her to the other side of the bed. Fike then got on top of her and took off her clothes. He took her hand, and with his hand on top of hers, began rubbing her crotch. She did not remember if his hand actually touched her private area. Fike then lay down beside her and rubbed his penis with her hand. M.S.F. further testified that Fike got back on top of her and pushed his penis “a little bit” inside of her. M.S.F. testified that she was frozen, and did not respond to Fike’s actions because she was scared. She indicated that when Fike got off of her, he told her that he had taken too much cough syrup. M.S.F. conceded that she had previously said that Fike had not put his penis in her vagina. However, she testified that her memory was better at trial because she was having flashbacks.
 

 M.S.F. agreed that she had many opportunities over the next two days to tell someone what happened, but did not. Her father worked on Saturday, and she spent the day with some of his friends. She testified that she slept in the bed with Fike the second night without further incident. Her father drove her home on Sunday, but his car broke down on the way, and her stepfather came and picked them up. Fike spent the night at M.S.F.’s house.
 

 M.S.F. did not report the incident to her mother until July 2005. Her mother then contacted the police. Steve Farris, a detective with the Orlando Police Department, testified that he contacted Fike, who confirmed that he rented a room at the hotel and that his daughter stayed with him for a few days in May 2005. Fike also confirmed that he shared a bed with M.S.F. when she visited and that there was cough syrup in the room because he had a cough from his job as a welder. Detective Farris indicated that Fike denied touching M.S.F. in a sexual way.
 

 R.S.J. then testified. Before and after R.SJ.’s testimony, the court gave the jury the appropriate limiting instruction. R.S.J. testified that he is sixteen years younger than his sister, Fike’s ex-wife and M.S.F.’s mother. R.S.J., who was twenty years old at the time of trial, testified that when he was between the ages of three and seven, Fike often babysat him when his mother went to work and his sister attended college. He testified that throughout those years, Fike would take him to the bathroom of his home and force him to perform oral sex. Other children were in the home, but were not present in the bathroom. He eventually told his mother, and explained that he waited so long because he was scared that Fike would hurt him.
 

 After the State rested its case, Fike called several witnesses who all testified that they had known Fike and his daughter for years, and saw them during
 
 *737
 
 M.S.F.’s May 2005 visit in Orlando. They each said that they spent time with M.S.F. the day after the alleged incident, and that she did not seem any different or say anything that led them to believe anything improper had happened. Fike also testified and denied any sexual contact with M.S.F. He admitted that in May 2005, he was living in a hotel in Orlando for a short time when M.S.F. came for a weekend visit, and that they both slept in the same bed during that visit. On the Friday night of the visit, they watched a movie and fell asleep in the same bed. He went to work the next morning and he gave his cell phone to M.S.F., who spent the day with his friends. After work, they visited several of his friends. On Sunday, he drove M.S.F. home, but his car broke down on the way, and M.S.F.’s stepfather came and picked them up. He stayed at M.S.F.’s home for a couple of nights, and eventually, M.S.F.’s stepfather took him home.
 

 The jury returned a guilty verdict on all three counts, with a special finding that Fike was over the age of eighteen years and M.S.F. was under the age of 12 years old at the time of the offenses. Fike was adjudicated guilty of capital sexual battery and sentenced to life in prison. He was not sentenced on the two counts of lewd or lascivious molestation. This appeal followed.
 

 Fike’s sole contention is that R.S.J.’s testimony was improper. He argues that there was no similarity between the
 
 Williams
 
 rule evidence and the charged crime in order to justify the introduction of R.S.J.’s testimony. The State contends that the issue was not preserved for appeal because that specific objection was not raised below. In addition, the State argues that even if the issue was preserved, the trial court correctly admitted the
 
 Williams
 
 rule evidence.
 

 We agree with the State that the issue was not preserved for appellate review because the specific objection complained of on appeal was not raised below. At the
 
 Williams
 
 rule hearing, Fike’s counsel argued only that there was no evidence corroborating R.S.J.’s testimony, and thus, it should not be admitted.
 
 [3]
 
 On appeal, he argues that
 
 Williams
 
 rule evidence was not sufficiently similar to the charged sex act. To preserve an issue for appeal, a litigant must: 1) make a timely contemporaneous objection in the trial court; 2) state the legal grounds for that objection; and 3) raise the specific argument in the appellate court that was asserted as the legal ground for the objection or motion made in the trial court.
 
 Harrell v. State,
 
 894 So.2d 935, 940 (Fla.2005);
 
 Sanchez v. State,
 
 909 So.2d 981, 984 (Fla. 5th DCA 2005). Since Fike’s argument on appeal differs from the objection raised below, Fike must not only show error, but error that is fundamental to obtain a new trial.
 
 See Marion v. State,
 
 287 So.2d 419, 420-21 (Fla. 4th DCA 1974);
 
 Davis v. State,
 
 276 So.2d 846 (Fla. 2d DCA 1973) (recognizing obvious error in admitting evidence of other offense at trial as fundamental, although error was not raised below nor argued on appeal);
 
 Robinson v. State,
 
 462 So.2d 471 (Fla. 1st DCA 1984) (reversing for “fundamental injustice” under rule 9.140(f)).
 

 The trial court’s ruling on the admission of evidence is reviewed for abuse of discretion.
 
 See LaMarca v. State,
 
 785 So.2d 1209, 1212 (Fla.2001);
 
 Bryan v. State,
 
 947 So.2d 1270, 1271 (Fla. 5th DCA 2007). Section 90.404, Florida Statutes (2007), Florida’s codification of the
 
 Williams
 
 rule, provides that evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact
 
 *738
 
 in issue such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, but is inadmissible when relevant solely to prove bad character or propensity. In cases involving sexual battery in a familial context, “a relaxed standard of admissibility” of the collateral-crime evidence applies.
 
 [4]
 

 McLean v. State,
 
 934 So.2d 1248, 1257 (Fla. 2006). Despite the relaxed standard of admissibility, the trial court must still function as a gatekeeper and perform an adequate balancing test to weigh the probative value of the evidence against its potential for unfair prejudice.
 
 Id.
 
 at 1261-62.
 
 McLean
 
 set forth the following guidelines:
 

 In assessing whether the probative value of evidence of previous molestations is substantially outweighed by the danger of unfair prejudice, the trial court should evaluate: (1) the similarity of the prior acts to the act charged regarding the location of where the acts occurred, the age and gender of the victims, and the manner in which the acts were committed; (2) the closeness in time of the prior acts to the act charge; (3) the frequency of the prior act; and (4) the presence or lack of intervening circumstances. This list is not exclusive. The trial courts should also consider other factors unique to the case.
 

 Factors other than the potential for unfair prejudice are also pertinent in a section 90.403 analysis. The trial court must determine whether the evidence of the prior acts will confuse or mislead jurors by distracting them from the central issues of the trial. Also necessary is an assessment whether the evidence is needlessly cumulative of other evidence bearing on the victim’s credibility, the purpose for which this evidence may be introduced. Further, in accord with our precedent, the trial court must guard against allowing the collateral-crime testimony to become a feature of the trial. Finally, if requested, the trial court shall give an appropriate cautionary instruction both at the time the evidence is presented and in its final charge to the jury.
 

 Id.
 
 at 1262.
 

 In the instant case, we conclude that the charged offense of sexual battery of Fike’s daughter and the collateral offense of sexual battery on R.S.J. were not sufficiently similar to render the collateral offense admissible. While M.S.F. is female, R.S.J. is male. Further, whereas R.S.J.’s alleged abuse occurred multiple times when he was between three and seven years old, M.S.F. was eleven at the time of the one incident. Additionally, unlike this case, which occurred when Fike was alone with M.S.F. in a hotel room, there were other children at the home when R.S.J.’s alleged abuse occurred. Lastly, the evidence indicated that the sexual abuse in this case occurred in a hotel bed, while R.S.J. testified that the acts against him occurred in the bathroom at his home. Apart from the fact that the sexual acts occurred in the
 
 *739
 
 familial context, there is simply no similarity between the two offenses.
 

 “The admission of improper collateral crime evidence is presumed harmful error because of the danger that a jury will take the bad character or propensity to commit the crime as evidence of guilt of the crime charged.”
 
 Mims v. State,
 
 872 So.2d 453, 456 (Fla. 2d DCA 2004) (quoting
 
 Sims v. State,
 
 839 So.2d 807, 811 (Fla. 4th DCA 2003)). For the harmless error rule to apply, the burden remains with the State to prove that there is “ ‘no reasonable possibility that the error contributed to the conviction.’ ”
 
 Mims,
 
 872 So.2d at 456 (quoting
 
 State v. DiGuilio,
 
 491 So.2d 1129, 1135 (Fla.1986)). However, because Fike did not preserve the argument raised on appeal, he must demonstrate that the error was not only harmful, but fundamental. While all fundamental error is harmful, not all harmful error is fundamental. Error that does not meet the exacting standard so as to be “fundamental” is subject to review in accord with
 
 DiGuilio,
 
 which discusses the harmless error test.
 
 Reed v. State,
 
 837 So.2d 366, 370 (Fla.2002).
 

 Fundamental error has been defined as error that “reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.”
 
 Anderson v. State,
 
 841 So.2d 390, 403 (Fla.2003) (citation omitted). The concept of fundamental error is rooted in notions of due process,
 
 Sochor v. State,
 
 619 So.2d 285 (Fla.1993), and the supreme court has cautioned appellate courts to exercise “ ‘very guardedly’ ” their discretion concerning fundamental error, and to apply the doctrine only in rare cases.
 
 Sanford v. Rubin,
 
 237 So.2d 134, 137 (Fla. 1970);
 
 see Farina v. State,
 
 937 So.2d 612, 629 (Fla.2006);
 
 Smith v. State,
 
 521 So.2d 106 (Fla.1988). Applying that standard here, we conclude the error was fundamental, as this case turned solely on M.S.F.’s credibility. There was no physical evidence to corroborate her version of events, nor was there any confession or admission. This was a swearing match between Fike and M.S.F.
 

 Fundamental error is error that undermines the confidence in the trial outcome and goes to the very foundation of a case.
 
 Mathew v. State,
 
 837 So.2d 1167, 1170 (Fla. 4th DCA 2003). That has occurred here. “Because of the commonly held belief that individuals who commit sexual assaults are more likely to recidivate as well as societal outrage directed at child molesters, the admission of prior acts of child molestation has an even greater potential for unfair prejudice than the admission of other collateral crimes.”
 
 McLean,
 
 934 So.2d at 1256. For these reasons, we conclude that the admission of R.S. J.’s testimony was fundamental error as it undermines confidence in the verdict. Consequently, we reverse Fike’s convictions and remand this matter for a new trial.
 

 REVERSED and REMANDED.
 

 PALMER, C.J. and SAWAYA, J., concur.
 

 [1]
 

 .
 
 Williams v. State,
 
 110 So.2d 654 (Fla.1959).
 

 [2]
 

 . The trial judge did not conduct the
 
 Williams
 
 rule hearing.
 

 [3]
 

 . Fike’s appellate counsel did not serve as trial counsel.
 

 [4]
 

 . As the supreme court explained in
 
 McLean:
 

 We later explained that "[t]here is no single definition or description of what constitutes a ‘familial relationship' in the context of child sexual batteiy.”
 
 State v. Rawls,
 
 649 So.2d 1350, 1353 (Fla. 1994). Therefore, "the determination of whether a familial relationship exists must be done on a case-by-case basis.”
 
 Id.
 
 We also explained that "[a] legitimate custodial relationship would be the equivalent of a familial relationship for purposes of permitting the introduction of similar fact evidence to corroborate the victim’s testimony of sexual battery under
 
 Heuring [v. State,
 
 513 So.2d 122 (Fla. 1987)]” and referred to
 
 Hallberg v. State,
 
 649 So.2d 1355 (Fla.1994), "for a discussion of what constitutes a custodial relationship.”
 
 Rawls,
 
 649 So.2d at 1353 n. 2.
 

 934 So.2d at 1257 n. 6.