SCALES, J.
Roseline Louidor, the defendant below, appeals her conviction and sentences for manslaughter, aggravated child abuse, and child neglect. For the reasons set forth below, we affirm without prejudice to allow the defendant to file a motion pursuant to Florida Rule of Criminal Procedure 3.850.
I. BACKGROUND

A. Daquan’s Death and the Charges Against Louidor

Following the death of two-year-old Da-quan Davis, Louidor was arrested and charged with first-degree murder, aggravated child abuse, and child neglect.[1]
Louidor, who was friends with Daquan’s mother, Cherelle, had been caring for Da-quan for several days prior to Daquan’s death. Louidor maintained that Cherelle retrieved Daquan from Louidor’s care, and kept Daquan for the weekend prior to his death. Louidor insisted that when Da-quan returned from ■ his weekend under Cherelle’s care, Daquan was bruised, sick, and listless.
Cherelle denied taking Daquan home with her, and asserted that Daquan was with Louidor and Louidor’s boyfriend[2] for ten days before Daquan was rushed to the hospital. Cherelle testified that she had visited Daquan during that ten-day period, but had never removed Daquan from Loui-dor’s care, and that Daquan was fine when she completed her visit.

B. Louidor’s Interrogation by the Police Detectives

Prior to her arrest, Louidor was interrogated by three police detectives for six to *307 eight hours over a two-day period; though she admitted to spanking the child, Loui-dor steadfastly denied ever kicking, punching, or otherwise injuring him.
The interrogation was videotaped and memorialized on a DVD. Defense counsel stipulated to the admission and playback of the DVD at trial, provided that certain portions, wherein police referred to Loui-dor’s boyfriend, be redacted.[3],[4] Louidor’s attorney made no other. objection to the introduction of the interrogation DVD.
Over the course of the trial, the interrogation DVD was played to the jury on four different occasions. Defense counsel objected only twice — both times to portions of the DVD wherein the detectives mentioned statements made by Louidor’s boyfriend — asserting the State’s failure to redact those portions was a Bruton violation. Defense counsel moved for mistrial on this basis, which was denied. After both instances, the court instructed the jury that the statements made by the detectives regarding Louidor’s boyfriend were not admitted for the truth of what the boyfriend actually said to police.[5]
During the multiple instances that the DVD was played for the jury, each of the three detectives repeatedly and adamantly told Louidor that they knew Louidor was guilty and that she had killed Daquan. At no time did the defense object to the introduction of these statements. In response to the detectives’ aggressive interrogation of her, Louidor persistently refused to confess to the crimes for which the detectives were accusing her of committing.
The following are illustrative excerpts from Louidor’s interrogation:
Detective Reyes: Right now you need to tell me the truth, because if it gets in front of a jury, do you want to look like — listen—“I didn’t know. I made a mistake. Listen. I lost it. This kid pissed me off so bad,” or do you want to just look like a cruel, cruel person?
Louidor: I don’t want to look like none of the above, because there is a God—
Detective Reyes: Yes, there is.
Louidor: — and I didn’t do that to that kid. I loved that kid like he was my own.
Detective Reyes: Then who did?
Louidor: You should ask his mother.
[[Image here]]
Detective Reyes: The injuries this child has didn’t happen two weeks ago, didn’t happen a week ago — some of them did, because he has some old. injuries — but *308 the injuries of his — the trauma he has on the inside of his body are within 24 hours.
Louidor: I don’t know about that. I did not beat that boy. I put my hand on the bible, and I know.
[[Image here]]
Sergeant Gonzalez: Guys, I need to interrupt you. We’re not asking you who did that. We know you did that. We’re not asking who. We know it’s you. I’m not going to argue with you. It was you. And as far as I’m concerned, I want to get to the answer. Not who. It was her. I want to know why. No, no. I’m not talking to you. Okay?
Louidor: I promise on my life.
[[Image here]]
Detective Reyes: Do you remember maybe hitting him in the stomach? Kicking him? Throwing him? Maybe?
Could have—
Louidor: No.
Detective Reyes: Could it have gotten to that?
Louidor: No. No.
Detective Reyes: Never.
Louidor: Never.
Detective Reyes: Never?
Louidor: When I mean never, never. God could help me today. Like I told you all yesterday, I will kiss the dirty ground and show you all, no, I have not.
[[Image here]]
Louidor: I did not do this to this child.
Detective Reyes: You ruptured his liver.
Louidor: No, I have not.
Detective Reyes: Why? Why? Why? Why?
[[Image here]]
Detective Reyes: When you ruptured his liver, was he the only one there? Were you the only one there?
Louidor: I — that what — that what you’re saying, that I ruptured his—
Detective Reyes: No. I’m telling you. I’m not asking you.
[[Image here]]
Louidor: I love that kid like he was my own (indiscernible).
[[Image here]]
Detective Vera: You took away his life.
Louidor: — you here with me, and you know—
Detective Vera: And you (indiscernible)
Louidor: — I did not do none of those things.
[[Image here]]
Detective Vera: You killed him.
Louidor: God feel it for me.
Detective Vera: You killed him.
Louidor: No, I did not.
Detective Vera: Yes, you did.
Louidor: No, I did not, sir.
Detective Vera: You killed him.
[[Image here]]
Detective Vera: You were with him the last week. You were with him the last week.
Louidor: I know I have not done it.
Detective Vera: You were with him the last week.
Louidor: I know I have not done it, in the grace of God. God knows.
[[Image here]]
Sergeant Gonzalez: And I want to tell you something. Okay? And I’m looking you in the eyes. I don’t believe you. You’re lying to me. You know you’re lying to me. I know you’re lying to me.
Louidor: How I lying—
Sergeant Gonzalez: And you know and I know that you’re lying to me. Okay? So—
Louidor: How do you — okay. Did you hear what you just said?
*309 Sergeant Gonzalez: Yeah. Absolutely. I say you’re lying to me.
Louidor: How do you know if I’m lying to you?
Sergeant Gonzalez: Because the facts speak for themselves.
[[Image here]]
Louidor: If I knew — I’m telling you, with all my might, with all my soul, I’m telling you the truth. I’m looking in your eye.
[[Image here]]
Sergeant Gonzalez: Because you caused the injuries on the baby, because you did it yourself.
Louidor: I did not.
Sergeant Gonzalez: Because you did it yourself.
Louidor: I did not.
Sergeant Gonzalez: Whether you lost control, whether you—
Louidor: I did not.
[[Image here]]
Sergeant Gonzalez: Okay? And you know what you did, and God knows what you did, and I know what you did. The only difference is God saw you do it. You saw yourself do it. Okay? I didn’t see you do it.
Louidor: God didn’t see me do it.
Sergeant Gonzalez: Of course he did.
[[Image here]]
Detective Reyes: Okay. That’s going to be your downfall when this goes in front of a jury, because it — it’s going to go in front of a jury, and they see you sitting here saying, “I didn’t do it. I didn’t do it.” The child didn’t do it to himself. The dog didn’t do it. The — either you, your boyfriend, or both of you. That’s it.
Louidor: None of the above.
[[Image here]]
Louidor: I didn’t do that, sir.
Detective Reyes: But it happened. You didn’t mean it to happen, but it did.
Louidor: I did not do that, sir.

C. The Jury’s Verdict

The jury found Louidor guilty of manslaughter (a lesser-included offense to the charge of first-degree murder, Count I), aggravated child abuse with an aggravated battery (Count II), and child neglect with great bodily harm (Count III). She was sentenced to twenty-five years on Counts I and II and fifteen years on Count III, all sentences running concurrently.

D. Arguments on Appeal

Louidor concedes that her trial lawyer did not object to those portions of the DVD during which the detectives repeatedly told Louidor that they knew she was guilty and knew she had killed Da-quan. Nevertheless, Louidor contends, for the first time on appeal, that this evidence was erroneously admitted and was so prejudicial that it amounted to fundamental error.
The State concedes that these portions of the DVD should not have been played for the jury but contends this error was not fundamental. Further, the State argues that defense counsel’s stipulation to this evidence being admitted was a strategic decision.

E. Summary of Our Holding

While we concur that the interrogating officers’ opinions as to Louidor’s guilt were objectionable and should not have been admitted, in light of defense counsel’s stipulation to the admission and play-back of the DVD, as well as defense counsel’s affirmative reliance on the DVD throughout the trial, we find that the error was invited by the defense, and therefore any claim of fundamental error was waived.
*310 As explained in more detail below, we affirm without prejudice to Louidor filing a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850.
II. ANALYSIS
A. Witness’ Opinion of Defendant’s Guilt — Jackson
The Florida Supreme Court has made it clear that a police officer’s opinion as to the guilt of the accused is inadmissible. Jackson v. State, 107 So.3d 328 (Fla.2012); Martinez v. State, 761 So.2d 1074 (Fla.2000).
In Jackson,[6] where the pernicious effect of this type of evidence was most recently addressed by the Florida Supreme Court, defense counsel moved pretrial to exclude a two-hour videotaped interrogation in which police officers repeatedly told Jackson they knew he was guilty. The trial court denied the motion, and, although the videotape was shortened to thirty-seven minutes, the remaining portion included instances of the detective telling Jackson, “I know you did it” and “there’s no doubt in my mind you did it, okay?”
The Jackson Court held that the trial court abused its discretion in overruling the defense objection and admitting these portions of the videotape. The Jackson Court acknowledged that, as a general rule, any witnesses’ opinion as to the guilt Or innocence of a defendant is inadmissible. Further, the Court noted, “there is an increased danger of prejudice when the investigating officer is allowed to express his or her opinion about the defendant’s guilt,” (quoting Martinez, 761 So.2d at 1080), because “[p]olice officers, by virtue of their positions, rightfully bring with their testimony an air of authority and legitimacy ... [and] [a] jury is inclined to give great weight to their opinions[.]” Jackson, 107 So.3d at 340 (quoting Tumblin v. State, 29 So.3d 1093, 1101 (Fla. 2010)). Finally, the Jackson Court acknowledged, “it is especially troublesome when a jury is repeatedly exposed to an interrogating officer’s opinion regarding the guilt or innocence of the accused.” Jackson, 107 So.3d at 340 (emphasis added).

B. Fundamental Error

Because defense counsel in Jackson objected to the admission of the interrogation tapes, the Jackson Court did not address whether allowing the jury to hear the tapes amounted to fundamental error, i.e., error so prejudicial to the defendant’s ability to receive a fair trial that reversal is required even absent a contemporaneous objection. See Brown v. State, 124 So.2d 481, 484 (Fla.1960).
Rather, the Court analyzed whether the improper admission of this evidence over the defense objection was harmless error. Jackson, 107 So.3d at 342. In determining that the error was not harmless, the Court agreed with Jackson that “the jury could not reasonably have been expected to disregard the strong inference of guilt created by the detectives’ repeated statements of personal beliefs and conclusions.” Id. at 339.
This case, however, is fundamentally different from Jackson. In the instant case, defense counsel not only failed to object to the admission of the clearly inadmissible portions of videotaped interrogation, defense counsel stipulated to their admission so long as Louidor’s boyfriend’s statements were redacted. Indeed, we can reverse Louidor’s convictions and sentences only if we determine the error was fundamental. J.B. v. State, 705 So.2d 1376, 1378 *311 (Fla.1998) (holding “[o]nly when error is fundamental can the error be raised on appeal in the absence of a contemporaneous objection”).
For error to be considered “fundamental,” it must “reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.” Odeh v. State, 82 So.3d 915, 921 (Fla. 4th DCA 2011) (quoting Brown, 124 So.2d at 484); see also Joyner v. State, 41 So.3d 306, 307 (Fla. 1st DCA 2010) (“Appellate courts are constrained to-exercise their discretion concerning fundamental error ‘very guardedly’ and ‘only in rare cases’ ” (quoting Fike v. State, 4 So.3d 734, 739 (Fla. 5th DCA 2009))).

C. Invited Error Doctrine

We need not reach the issue of whether the admission of the objectionable evidence constituted fundamental error in this case, however, because we conclude that the error was invited by the defense. See Universal Ins. Co. of N. Am. v. Warfel 82 So.3d 47, 65 (Fla.2012) (“Fundamental error is waived under the invited error doctrine because ‘a party may not make or invite error at trial and then take advantage of the error on appeal.’”) (quoting Sheffield v. Superior Ins. Co., 800 So.2d 197, 202 (Fla.2001)).
When, as here, the defense stipulates to the admission of evidence and relies on that evidence as illustrated by argument to the jury, or otherwise, the defense should be estopped from later arguing that the admission of that evidence so tainted the trial as to constitute fundamental error. See U.S. v. Jernigan, 341 F.3d 1273, 1290 (11th Cir.2003) (“[A] criminal defendant may not make an affirmative, apparently strategic decision at trial and then complain on appeal that the result of that decision constitutes reversible error. This is precisely the situation that the invited error doctrine seeks to avert_”).[7]

D. Rule 3.850 Remedy

Without concluding one way or another, on this record, it appears as though de *312 fense counsel’s stipulation to the introduction of the interrogation DVD may have been a strategic decision. Defense counsel’s stipulation resulted in the jury seeing and hearing the interrogation which included both the inadmissible opinion testimony and the defendant’s steadfast denial that she ever kicked, punched, or otherwise injured Daquan.
Importantly, defense counsel’s stipulation to the admission of the DVD was not unqualified. Defense counsel’s stipulation was specifically qualified so that statements made by Louidor’s boyfriend in the interrogations were not admitted per Bru-ton. Indeed, defense counsel objected to the portions of the DVD in which the interrogators mentioned statements which had been made by Louidor’s boyfriend. See supra p. 4.
Hence, it appears, at least from the record on plenary appeal, that the defense’s stipulation may have been strategically designed so that certain otherwise inadmissible statements would be admitted, while others would be omitted.
Additionally, in opening statement and closing argument, defense counsel commented to the jury on Louidor’s refusal to confess to the crimes, implicitly arguing to the jury that only a truly innocent person could withstand such aggressive interrogation.[8]
As the record evidence regarding defense counsel’s motivations is unclear, in our view, a more appropriate remedy would be a timely-filed motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850. The trial court could then, if deemed appropriate, conduct an evidentiary hearing as to whether defense counsel was acting strategically (and if so, whether such strategy was reasonable) or otherwise. See Williams v. State, 515 So.2d 1042 (Fla. 3d DCA 1987) (finding that counsel’s failure to object to the introduction of evidence that would have been deemed inadmissible constituted ineffective assistance of counsel).[9]
*313 III. CONCLUSION
We conclude that the doctrine of invited error applies here and effectively waived any complaint of fundamental error that might have occurred below. The defendant’s conviction on direct appeal is therefore affirmed without prejudice to the defendant filing an appropriate rule B.850 motion.
Affirmed.
WELLS, J., concurs.

. The medical examiner testified that the cause of Daquan’s death was homicide, caused by one or more severe blows to his abdomen.

. Louidor’s boyfriend was also charged in connection with Daquan’s death, but his case was severed from Louidor’s, pursuant to Bruton v. U.S., 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). He did not testify at Louidor’s trial.

. See Bruton, 391 U.S. at 132, 88 S.Ct. 1620. In Bruton, the United States Supreme Court held that, in a joint trial, the admission of a non-testifying codefendant's confession that inculpates the other non-confessing codefendant constitutes a violation of the Confrontation Clause of the Sixth Amendment. Id. at 125, 88 S.Ct. 1620.

. The State requested that the trial court read the parties' stipulation to the jury:
State: Judge — and if you would at this time read our stipulation, I would appreciate it.
[[Image here]]
Court: Ladies and Gentleman, portions of the DVD you are about to view have been redacted by stipulation of the State and defense. Both parties agree that there are some parts of the DVD that are not relevant for your determination or consideration of this case. You are not to speculate on the parts that have been redacted.

.Although Louidor also raises this Bruton issue on appeal, given (i) the context of the statements; (ii) the curative instruction; (iii) the hypothetical nature of the statements; and (iv) the subsequent testimony from the officers which established that they often use misstatements or lies to see how a suspect reacts, we conclude this claim is without merit and warrants no further discussion. See, e.g., Looney v. State, 803 So.2d 656, 672-73 (Fla.2001); Delgado v. State, 574 So.2d 1129, 1130 (Fla. 3d DCA 1991).

. The opinion in Jackson was issued one month after Louidor's trial.

. The dissent relies on Sheppard v. State, 151 So.3d 1154 (Fla.2014) for the proposition that the invited error doctrine does not apply to this case. The dissent characterizes the admission of the redacted videotape in Sheppard as agreed to by the defense. See infra pp. 319-20, n. 13. The Sheppard opinion, however, merely states that "admission of it [the redacted videotape] was not objected to by Sheppard’s counsel." Sheppard, 151 So.3d at 1161 (emphasis added). There is no mention of any agreement or stipulation by the defense in Sheppard. The instant case is distinguishable because Louidor’s counsel specifically stipulated to, i.e., agreed to, or invited, the admission and play-back of the DVD.
To the extent that the dissent concludes that defense counsel’s stipulation "carries no greater legal significance than would a failure to object when the DVD was offered into evidence at the trial,” we disagree. See infra pp. 319-20, n. 13. While simply failing to object to the admission and play-back of the DVD would not have triggered the doctrine of invited error, affirmatively agreeing to the admission and play-back of the DVD did trigger application of the doctrine. See, e.g., U.S. v. Fuentes, 537 Fed.Appx. 921, 926 (11th Cir.2013) (" ‘[Fjailing to object does not trigger the doctrine of invited error.’ Rather, the doctrine of invited error applies when a defendant affirmatively requests or stipulates to a particular jury instruction.”) (citations omitted); cf. Novak v. State, 974 So.2d 520, 522 (Fla. 4th DCA. 2008) ("It is unreasonable to equate a failure to object to a standard jury instruction to ‘invited error.’ ”); Jernigan, 341 F.3d at 1290 ("[B]y affirmatively agreeing to the playing of the tapes, Jernigan effectively caused, i.e., invited, any Bruton error that resulted from the jury’s hearing them.”). Further, as discussed in the next section, the record shows that defense counsel affirmatively relied on the DVD as evidenced by argument to the jury. See infra Part 11(D).

. In opening, defense counsel stated:
Then we go to the police investigation. The police investigation — they brought her in. They interviewed her. You’re gonna see the videotape.- You look at it, and you malee up your mind as to what was said and what was not said.
(emphasis added).
In closing, defense counsel argued:
They can go to the tape, and they can pick and choose all they want. But you know the tape — and you know at least the first interview was like basically a shouting match and an accusation, where all they were doing is, "You’re guilty. You're guilty. You’re guilty,” to get her to say, "Oh, yeah. I struck this child.” That's what that was. Did anybody give her — did anybody have, like, a normal conversation? And then the prosecutor says, "You know she must be lying here, because look at— look at how she's shouting in — in—in the tape.” Well, here, this is a court of law, here we know we have a judge. We make objections. People are talked to like human beings, not like animals, like the three people over here, which basically that's what they did. They didn’t let her talk. They were in her face, and people don’t react well to people being in their face. They tend to raise your voice. But I suggest to you that — suggest to you that the child was in the care of the mother, and she told them on that day time and time again. Even one of the — even one of the parts that they played, where the last detective goes in there — -the one who’s talking about God and whatnot, "How do you think” — You know, they have, like a guessing game. "How do you think the injuries got there?” What does she say? “Ask the mother. Look at the mother.”
(emphasis added).

. The dissent concludes that defense counsel’s stipulation and failure to object to the interrogators’ inadmissible opinion testimony was not strategic. See infra pp. 322-25. Rather, the dissent implies that defense counsel un *313 wittingly permitted the introduction of such inadmissible testimony. To support its position, the dissent suggests that there could be no strategic reason to allow such testimony to be introduced. See infra pp. 324-25. However, defense counsel could have allowed introduction of the evidence so that the jury would infer that no guilty person could withstand such a "browbeating interrogation,” as characterized by Louidor. Respectfully, we think any conclusion regarding why such testimony was introduced by stipulation is premature and speculative.
Contrary to the dissent's assertion, there is evidence that defense counsel may have "knowingly permitted the jury to be exposed to evidence that indisputably should have been excluded.” See infra pp. 319-20, n. 13. In addition to the evidence already discussed, the existence of the stipulation itself, coupled with the sheer quantity of the unchallenged yet prejudicial statements of the officers as to Louidor’s guilt and believability — which, as pointed out by the dissent, comprised more than fifty instances — suggests to us that defense counsel may have strategically permitted the jury to be exposed to inadmissible portions of the DVD. To conclude otherwise would suggest that defense counsel was asleep at the wheel. On this record, we are unable to conclude, and express no opinion as to, whether defense counsel’s stipulation to the admission and play-back of the DVD, as well as his failure to object to the officers’ opinion testimony, was: (a) a strategy decision; (b) the result of defense counsel’s failure to review the DVD prior to trial; (c) defense counsel’s inattention at trial; or (d) otherwise. Such a determination would be more appropriately resolved at a post-conviction hearing on claims of ineffective assistance of counsel.